UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| GLORIA CAROLINA MANZO-HERNANDEZ, *et al.*, | § § § | |
| Petitioners, | § | |
| VS. | § | CIVIL ACTION NO. 5:20-CV-95 |
| | § | |
| OMAR JUAREZ, *et al.*, | § § | |
| Respondents. | § | |

## MEMORANDUM OPINION

This lawsuit concerns five material witnesses in custody at La Salle County Regional Detention Center in Encinal, Texas. (Amend. Pet., Doc. 16, 1) Petitioners allege that they have been detained through a "uniform policy or practice" that fails to meet the requirements of the Material Witness Statute and the Constitution. (*Id.*) They pursue a petition for writ of habeas corpus and an action under the Declaratory Judgment Act. Petitioners also seek to represent a class of about 156 individuals detained under "similar or identical" circumstances. (*Id.* at ¶¶ 39, 41, 44)

The Government moved to dismiss the case in its entirety. (Motion, Doc. 21) On October 5, the Court granted the Motion, denying the Petition for Writ of Habeas Corpus and dismissing the cause of action under the Declaratory Judgment Act. (Order, Doc. 27) In this Memorandum Opinion, the Court provides the reasons supporting that decision.

### I. Allegations and Procedural Background[1]

The Amended Petition focuses on the common circumstances surrounding Petitioners' detention. (*See* Amend. Pet., Doc. 16, ¶¶ 12—30) Each Petitioner was arrested as an undocumented alien by United States Border Patrol agents, but was never charged with a crime.

---

[1] Respondents base their Motion on Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). To consider Respondents' Motion under Rule 12(b)(6), the Court accepts Petitioners' allegations as true, and can also consider documents attached to the Petition. *See Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC,* 594 F.3d 383, 387 (5th Cir. 2010). As to Respondents' Motion under Rule 12(b)(1), the Court may look to the complaint, "the complaint supplemented by undisputed facts evidenced in the record", or the "complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

(*Id.* at ¶ 12) Instead, the Government requested that each Petitioner be designated a material witness for a criminal case against one or more individuals who trafficked the material witness into the United States. (*Id.*) The Government's request to the Magistrate Judge for each material witness was identical: the top of the form had blanks for the name and citizenship of the proposed material witness, and the bottom had a proposed Order that the material witness be held in custody on a $25,000 bond. (*Id.* at ¶ 14) Each Petitioner appeared briefly before the Magistrate Judge once, without counsel. (*Id.* at ¶ 17) The Magistrate Judge issued each Order as proposed without subsequent motion by the Government. (*Id.* at ¶ 15) The Magistrate Judge scheduled no subsequent hearings for the material witnesses, who were held in custody for six to nine months. (*Id.* at ¶¶ 5—9, 18)

Petitioners allege that this process and the absence of any individualized findings related to release, ability to pay, using deposition testimony, or the necessity of detention, fails to comply with the Material Witness Statute. (*Id.* at ¶ 16) Specifically, Petitioners allege that this "pattern" represents a "uniform and longstanding practice". (*Id.* at ¶ 19) An observer of over 2,000 cases between 2017 and 2019 reports that each case "followed this same pattern: Without any appearance by counsel, presentation of evidence, or factfinding, judges ordered witnesses detained until the end of the criminal case and subject to a $25,000 bond. No witness was ever released on bond." (*Id.* (internal citations omitted)) Petitioners allege that the presiding Magistrate Judge advised them that there was no way to secure their release and that a lawyer would only provide status updates. (*Id.* at ¶ 20) Petitioners also allege that material witnesses detained at the facility are rarely able to testify by deposition, and when a deposition occurs, the witness remains detained. (*Id.* at ¶ 21)

Petitioners compare their experience with that of the defendants in the related criminal cases for which Petitioners are held to testify. (*See id.* at ¶ 27) In those cases, the defendants have each received an individual detention hearing that resulted in conditional release. (*Id.* at ¶ 27) In contrast, Petitioners have not appeared in court since their initial appearance, and they

have not been contacted by any party to the underlying criminal proceeding.  (*Id.* at ¶ 26)  The Petitioners' extended detention has "taken a substantial toll on their mental, emotional, and physical health", and the COVID-19 pandemic has "exacerbated the harms".  (*Id.* at ¶¶ 28—29)  Petitioners are all willing to testify by deposition.  (*Id.* at ¶ 30)

## II. Applicable Standard

"Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure allow a party to challenge the subject matter jurisdiction of the district court to hear a case."  *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing FED. R. CIV. P. 12(b)(1)).  Federal district courts are of limited jurisdiction and may hear only those cases authorized by a federal statute, the Constitution or a United States treaty.  *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994); *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001).  "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction."  *Ramming*, 281 F.3d at 161.  "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist."  *Id.*

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); FED. R. CIV. P. 12(b)(6).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A plaintiff's complaint need not contain detailed factual allegations, but it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  These allegations, assuming they are true, "must be enough to raise a right to relief above the speculative level."  *Id.*

### III. Analysis

Petitioners pursue a petition for writ of habeas corpus and an action under the Declaratory Judgment Act.

#### A. Petition for Writ of Habeas Corpus

Petitioners' habeas petition arises from alleged violations of 18 U.S.C. §§ 3144 and 3142, which detail the requirements to detain a material witness and a defendant pending trial. (Amend. Pet., Doc. 16, 1—2, 49)

An individual may seek habeas relief under 28 U.S.C. § 2241 if he is "in custody in violation of the Constitution or laws or treaties of the United States". 28 U.S.C. § 2241(c); *Munaf v. Geren*, 553 U.S. 674, 693 (2008). The "sole function" of a habeas petition is to "grant relief from unlawful imprisonment or custody". *Pierre v. United States*, 525 F.2d 933, 935–36 (5th Cir. 1976). In the present matter, the parties agree that the Petitioners are in custody. As a result, the central dispute concerns whether the Court should exercise its authority to consider Petitioners' request for relief in habeas corpus and, if so, whether the material witnesses's detention is unlawful.

Even when a district court possesses subject matter jurisdiction over a petition for writ of habeas corpus, equitable principles and consideration of the orderly administration of criminal justice may require the court in its discretion to "forgo the exercise of its habeas . . . power." *Munaf*, 553 U.S. at 693 (quoting *Francis v. Henderson,* 425 U.S. 536, 539 (1976)). In the present case, the Government argues that these factors warrant the Court declining to exercise its authority to hear Petitioners' habeas claim because the Bail Reform Act provides Petitioners with the very relief they seek—judicial review of their ongoing detention as material witnesses.

The Bail Reform Act, 18 U.S.C. §§ 3141—3150, provides detainees with "an essential safeguard" through an "expedited appeal procedure" of detention orders. *See Fassler v. United States*, 858 F.2d 1016, 1017 (5th Cir. 1988) (discussing 18 U.S.C. § 3145). Material witnesses detained under Sections 3142 and 3144 enjoy the protections of Section 3145. *See* 18 U.S.C.

4 / 12

§ 3145(b) ("Review of a detention order"); *See also* 18 U.S.C. § 3145(c) ("Appeal from a release or detention order"). As an initial step, the detainee may file a motion to revoke or amend the detention order with the district court, which shall determine the motion "promptly." *Fassler*, 858 F.2d at 1017. In addition, Section 3145 affords detainees the right to appeal the district court's decision, which the court of appeals also shall determine "promptly." 18 U.S.C. § 3145(c). Over the years, detained individuals have utilized this process to secure release. *See, e.g.*, *United States v. Okhumale*, 813 Fed. Appx. 936 (5th Cir. 2020) (per curiam) (vacating a district court's order that denied a motion to revoke a detention order); *United States v. Zaccaria*, 347 Fed. Appx. 984 (5th Cir. 2009) (per curiam) (reversing and instructing the district court to promptly enter an order of release under Section 3142(b) or (c)); *United States v. Okhumale*, 3:20-CR-122-L, 2020 WL 2812868 (N.D. Tex. May 29, 2020) (granting motion to revoke detention order).

In the current matter, rather than availing themselves of Section 3145's expedited review process, Petitioners chose to pursue this action in habeas corpus. More than thirty years ago, the Fifth Circuit expressed its view whether pretrial detainees who possessed rights under the Bail Reform Act to seek review of a Magistrate Judge's detention order could nevertheless challenge their detention in habeas corpus. *See Fassler*, 858 F.2d at 1017. In *Fassler*, a pretrial detainee did not seek review of the detention order under the Bail Reform Act, and instead challenged the order in habeas corpus. During the pendency of the habeas petition, the man was convicted. As a result, the Fifth Circuit held that the "request for release from pretrial confinement is moot." *Id.* at 1018. In dicta, however, the Fifth Circuit addressed the detainee's challenge of the detention order in habeas corpus. The court "decline[d] to hold that § 3145 provides the *exclusive* means by which a person under indictment can challenge his pretrial detention." *Id.* (emphasis in original). But the court continued: "Nevertheless, the terms of the Bail Reform Act and the potential for abuse of the writ . . . should ordinarily provide strong incentive for defendants to employ Section 3145 appeals." *Id.* In *Fassler*, the court found the

detainee's chosen path was not an abuse, because the approach was "novel and not wholly without merit." *Id.* at 1019. The court cautioned, however, that "[s]imilar indulgences will not be afforded criminal appellants in the future", because in most cases, it would result in "duplication of effort by the courts and government with no obvious benefit to be gained by the defendant." *Id.*

Guided by *Fassler*, the Court finds that the Bail Reform Act provides the Petitioners with an adequate avenue to seek review of the detention orders they challenge in habeas corpus. As a result, based on equitable principles and the need to promote the orderly administration of justice, the Court declines to exercise its authority to consider the Petition for Writ of Habeas Corpus.

Petitioners respond that the Bail Reform Act affords an inadequate avenue to "review and remedy the alleged *initial and ongoing* deprivation of mandatory process and findings prerequisite to detention". (Response, Doc. 24, 7 (emphasis in original)) But nothing about the Section 3145 review process prevents Petitioners from raising those issues, first to the district court, and then, if necessary, to the court of appeals. Petitioners also note that they would individually have to seek review under the Bail Reform Act, whereas the current Petition, filed as a putative class action, challenges the procedures that the Magistrate Judge employs as to all material witnesses. The Court finds this argument unpersuasive. Petitioners allege that the Magistrate Judge in Laredo employs the identical procedure for all material witnesses. The Court trusts that if the district court in Laredo or the Fifth Circuit concluded that those procedures as to one material witness did not comply with the Material Witness Statute, the procedures themselves would be amended to comply with the statute. In essence, success by one detained material witness as to a procedure that is allegedly uniform would almost certainly result in relief as to all material witnesses.

### B. Request for a Declaratory Judgment

Petitioners also request a declaratory judgment, based on the same alleged violations

that form the basis of the Petition for Writ of Habeas Corpus. (Amend. Pet., Doc. 16, 1—2) In analyzing whether to dismiss a cause of action under the Declaratory Judgment Act, a district court must determine: "(1) whether the declaratory action is justiciable; (2) whether the court has the authority to grant declaratory relief; and (3) whether to exercise its discretion to decide or dismiss the action." *Sherwin-Williams Co. v. Holmes County*, 343 F.3d 383, 387 (5th Cir. 2003). In the present case, actual controversy exists among the parties, so the matter is justiciable. *Id.* As a result, the Court's analysis focuses on whether it possesses authority to grant declaratory relief and, if so, whether it should exercise its discretion to consider the request.

1. **Jurisdiction**

In its Motion, the Government argues that if Petitioners' habeas petition is dismissed, the remaining request for declaratory relief cannot stand alone. (Doc. 21, 9) Specifically, the Government contends that the Court lacks subject matter jurisdiction because the Declaratory Judgment Act does not provide an independent basis for such jurisdiction. (*Id.*)

While the Government correctly notes that a request for a declaratory judgment requires an independent basis for subject matter jurisdiction, federal question jurisdiction exists in "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. As a result, under the Declaratory Judgment Act, jurisdiction exists "[s]o long as the basis for the preliminary injunction or declaratory judgment is federal law". *Jacuzzi v. Pimienta*, 762 F.3d 419, 421 (5th Cir. 2014) (concluding that a declaratory judgment action that raised federal questions was improperly dismissed); *see also Wacker v. Bisson,* 348 F.2d 602, 611 (5th Cir. 1965) (holding that "the district court has jurisdiction to review the legality of the extradition proceeding under the Federal Declaratory Judgment Act").

In the present matter, Petitioners rest their declaratory judgment action on alleged violations of federal statutes and federal constitutional rights. As a result, an independent basis for subject matter jurisdiction supports the request for a declaratory judgment.

## 2. Sovereign Immunity

The Government also argues that the Declaratory Judgment Act does not waive sovereign immunity as to the Petitioners' claims. (Motion, Doc. 21, 8—9) In response, Petitioners contend that sovereign immunity does not apply when an official—here, the warden of a detention facility—acts beyond his statutory or constitutional authority. (Response, Doc. 24, 23—24)

The Supreme Court has outlined two scenarios when a suit against a sovereign is not barred: 1) the officer's powers are limited by statute and he acted beyond those limitations; or 2) the statute or order conferring power is alleged to be unconstitutional. *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 689—690 (1949).

Here, Petitioners have alleged that the detention orders issued by the Magistrate Judge in Laredo failed to satisfy the requirements of the Material Witness Statute and also violated the material witnesses's constitutional rights. Petitioners do not allege that the Warden acted beyond his powers, as he possessed facially valid detention orders to maintain custody of the material witnesses. But they do allege that the detention orders themselves are invalid because they were issued in violation of the United States Constitution and the Material Witness Statute. In other words, they allege that the orders conferring power on the Warden are unconstitutional and fail to meet the statutory requirements. As a result, under *Larson*, sovereign immunity does not bar this cause of action.

## 3. The Court's Discretion

Although the Petitioner's cause of action under the Declaratory Judgment Act can stand alone, the court must determine whether it should exercise jurisdiction. Based on the specific circumstances surrounding the Petitioners' claims, the Court concludes that the need for efficiency and consideration of practicality and wise judicial administration justify dismissal of the request for declaratory relief.

The Declaratory Judgment Act establishes that a federal district court "*may* declare the

rights and other legal relations of any interested party seeking such declaration". 28 U.S.C. § 2201 (emphasis added). Based on this language, the Supreme Court has emphasized the discretionary nature of the statute: "Congress . . . created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995); *see also Vulcan Materials Co. v. City of Tehuacana,* 238 F.3d 382, 390 (5th Cir. 2001) (confirming the discretionary nature of the Declaratory Judgment Act).

When determining whether to consider a request for declaratory relief, a district court must consider:

> (1) whether there is a pending state action in which all of the matters in controversy may be fully litigated;
>
> (2) whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant;
>
> (3) whether the plaintiff engaged in forum shopping in bringing the suit;
>
> (4) whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist;
>
> (5) whether the federal court is a convenient forum for the parties and witnesses;
>
> (6) whether retaining the lawsuit in federal court would serve the purposes of judicial economy; and
>
> (7) whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending.

*Sherwin-Williams,* 343 F.3d at 388 (quoting *St. Paul Ins. Co. v. Trejo,* 39 F.3d 585, 590—91 (5th Cir. 1994)). The seven "*Trejo* factors" incorporate three aspects of analysis: federalism, fairness, and efficiency. *Id.* at 390—91. In addition to the *Trejo* factors, a court must consider the "presence, nature, and role of the federal law issues". *Id.* at 395—97. And "[i]n the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial

administration." *Id.* at 389 (quoting *Wilton*, 515 U.S. at 288).

Most of the factors do not directly apply to the current matter, which does not involve any state proceedings or issues of state law.[2] But the inapplicability of these factors only means that they weigh neither for nor against the consideration of the cause of action. The Fifth Circuit has explained that "[t]he lack of a pending parallel state proceeding should not automatically require a district court to decide a declaratory judgment action". *Sherwin-Williams*, 343 F.3d at 394. And in this case, the *Trejo* factor of judicial economy, and considerations of practicality and wise judicial administration all weigh against adjudication of the matter.

First, judicial economy supports dismissal of this action. Through Section 3145, Congress created an expedited procedure for the review of pre-trial detention orders, including those through which material witnesses are held in custody. The Bail Reform Act's procedures afford a review process that in most instances will resolve a material witness's challenge significantly faster than an action under the Declaratory Judgment Act. As one example, the Court takes judicial notice that in one matter, a detained individual obtained a district court's review of a magistrate judge's detention order, successfully appealed the denial of his motion to revoke to the Fifth Circuit, and then on remand secured his release from the district court, all in less than five months. *See United States v. Zaccaria*, 347 Fed. Appx. 984, 985 (5th Cir. 2009); *United States v. Zaccaria, Cause No.* 8-cr-443-22, Order Cond. Release, CM/ECF No. 389 (S.D. Tex. Oct. 23, 2009). In contrast, the discovery process and trial of the instant matter would most likely require more than one year. In the Fifth Circuit's *Fassler* decision, the court expressed that efficiency supported the preference for detained individuals to avail themselves of the remedies in the Bail Reform Act, rather than allowing them to pursue relief in habeas corpus. *Fassler*, 858 F.2d at 1018. This same preference applies when comparing the Bail Reform Act's expedited procedures to actions brought under the Declaratory Judgment Act.

---

[2] Specifically, this case does not implicate *Trejo* factors one through five and factor seven. In addition, as a federal court would consider both a review under Section 3145 and a declaratory judgment action, the consideration of federal law issues also is not relevant.

Consideration of practicality and wise judicial administration also support the dismissal of Petitioners' request for declaratory relief. Congress specifically addressed the detention of material witnesses in Sections 3142 and 3145, and in doing so created a specific process for review. In a similar context, courts have declined to exercise jurisdiction over a declaratory judgment action when Congress had created administrative remedies available to the plaintiff. *See, e.g.*, *Gonzalez v. Manjarrez*, 2013 WL 152177, at *15 (W.D. Tex. Jan. 4, 2013) ("[A] district court may decline to exercise jurisdiction over a declaratory judgment action out of deference to an administrative proceeding created by Congress, even in the absence of any 'federal-state conflict.'" (citing *Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 246 (1952)), *aff'd*, 558 Fed. Appx. 350 (5th Cir. 2014). In *Gonzalez,* the district court explained that permitting the plaintiff to duplicate the administrative process that Congress created would "thwart the system" and "provide a disincentive for Congress to continue improving the mechanisms by which an aggrieved employee can protect his rights." *Id.* at 14—15 (quoting *Broadway v. Block*, 694 F.2d 979, 985 (5th Cir. 1982)). In the same vein, allowing Petitioners in the present matter to challenge their detention orders via the Declaratory Judgment Act would run counter to Congress's attempt to provide tailored remedies to detainees through the Bail Reform Act and the Material Witness Statute. In addition, considering Petitioners' request would also effectively allow them to circumvent *Fassler's* guidance merely because they sought relief under the Declaratory Judgment Act rather than in habeas corpus. These potential results weigh significantly against the Court's consideration of Petitioners' cause of action for declaratory relief.

## IV. Conclusion

The Court recognizes that the COVID-19 pandemic has placed a significant burden on detention centers and the detained individuals. Here, however, Petitioners possess a clear path for expedited review and appeal of the detention orders that govern their continued custody. As the Fifth Circuit noted, detained individuals "have the responsibility to appeal pretrial detention

orders promptly, and we, the courts, have an equal responsibility to adjudicate them promptly." *Fassler*, 858 F.2d at 1019. This Court is confident that should Petitioners chose to pursue a Section 3145 review, that they will receive a prompt adjudication of their claims.

SIGNED this 12th day of November, 2020.

*Fernando Rodriguez, Jr.*
Fernando Rodriguez, Jr.
United States District Judge